**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. **19-2565**_____

BLANCHE MARCELENO;
SUSAN EBBS;
EDWARD CAUSSADE; and
TYLER BRUNNER,

Plaintiffs,

v.

CITY OF GREELEY, COLORADO,

Defendant.

_____

**COMPLAINT**
_____

**INTRODUCTION**

1.      In this First Amendment case, Plaintiffs mount a facial challenge to Greeley Municipal Code § 11.01.809, which creates a blanket ban on pedestrians standing on any traffic median anywhere in the City for longer than is "reasonably necessary to cross the street." Through what will be referred to hereafter as the "Median Ban" or the "Ban," Greeley has prohibited all expressive activity by pedestrians on all medians in the City.

2.      In Greeley, as is true across Colorado and across the country, medians have long been an important safe harbor to communicate constitutionally-protected speech to a sizeable and diverse audience. Raised medians allow speakers to safely communicate messages to two-directional traffic.

3.     Although the challenged ordinance is aimed at purported risks to pedestrian and traffic safety, the record is clear that the true targets of the ban—as enacted and as enforced—are impoverished individuals seeking charity.

4.     Greeley enacted the Median Ban to take the place of a law that had explicitly targeted panhandling and solicitation.  Indeed, the Police Chief, whom the City identified as the "staff contact" for the Median Ban, said publicly that the Ban was designed to target panhandling, and he openly disparaged those who engaged in this activity.

5.     While the Median Ban is intended to target impoverished solicitors, the reach of the Ban is much broader.  It prohibits all expressive conduct, including distributing literature, displaying signs of protest, and urging passers-by to vote for particular candidates or ballot measures.

6.     Furthermore, the Median Ban applies to each and every median in Greeley, regardless of size, volume of traffic, speed of surrounding cars, time of day, or any other factor that might arguably impact pedestrian and driver safety.

7.     Plaintiffs are four individuals who seek to communicate messages to the occupants of passing vehicles by holding signs while standing on Greeley's medians. Three are needy individuals who seek to solicit charity for themselves, and the fourth is a community activist and journalist who seeks to share political messages.  They wish to engage in expression that is protected by the First Amendment but forbidden by the Greeley law that is challenged in this case.

8.     Plaintiffs Marceleno and Ebbs seek nominal damages. All Plaintiffs seek interim and permanent injunctive relief and a declaration that the Median Ban is unconstitutional.  They

seek to preserve their right, and the right of others, to engage in expressive and communicative activity on medians in Greeley.

## JURISDICTION AND VENUE

9.     This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.  Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

10.     This Court has jurisdiction to issue the declaratory relief requested pursuant to the Declaratory Relief Act, 28 U.S.C. §§ 2201, 2202.

11.     Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b).  The Defendant resides within the District of Colorado, and all relevant events occurred and will occur in the District of Colorado.

## PARTIES

12.     Plaintiff Blanche Marceleno is a resident of Greeley who is needy and seeks to ask for charity from passersby while standing on medians in Greeley, in violation of the Median Ban.

13.     Plaintiff Susan Ebbs is a resident of Gilcrest, Colorado who is needy and seeks to ask for charity from passersby while standing on medians in Greeley, in violation of the Median Ban.

14.     Plaintiff Edward Caussade is a resident of Greeley who is needy and seeks to ask for charity from passersby while standing on medians in Greeley, in violation of the Median Ban.

15.     Plaintiff Tyler Brunner is a resident of Greeley who is a community activist and seeks to stand on medians while holding signs with messages that express political viewpoints, in violation of the Median Ban.

16.     Defendant City of Greeley is a municipal corporation incorporated in the State of Colorado.  It has adopted and enforced the law banning presence on medians that is challenged in this case.

17.     All actions and inactions of the Defendant described herein are carried out under color of state law.

## FACTUAL ALLEGATIONS

### The Median Ban

18.     The Median Ban, titled "Pedestrians not to remain on medians," is codified at Greeley Municipal Code § 11.01.809 and states:  "No pedestrian may remain upon a median for longer than is reasonably necessary to cross the street."

19.      "Median" is defined as "any area of a street, roadway, or public driveway defined by painted, raised, or depressed channelization barriers or markers usually in the middle of the roadway, at driveways, or at intersections, which control turning movements or separate traffic lanes."  Greeley Municipal Code § 11.01.102.

20.     Violation of the Median Ban is punishable by a fine of up to $500.  Greeley Municipal Code § 1.32.010.

### History of the Median Ban

21.     The Median Ban was passed to target panhandling in Greeley.

22.     The Greeley City Council first considered the Median Ban at its June 26, 2015 meeting.

23.     At the same meeting on June 16, 2015, the City Council considered the repeal of a law titled "Solicitation and panhandling in public rights-of-way."  This law, codified at Greeley

4

Municipal Code Section 10.24.055, had made it unlawful for people to solicit occupants of vehicles on roads.

24.     Both the Median Ban and the repeal of the solicitation ban passed at a July 7, 2015 City Council meeting.

25.     The summaries of the Median Ban and the repeal of the solicitation ban, as reflected in City Council agendas, are identical:  "The proposed revisions and additions are intended to clarify impermissible conduct with a refocused emphasis on safety without limiting meaningful communication."

26.     The "council goals or objectives" listed in the City Council agendas for the two ordinances are also identical: (1) "safety," and (2) "[c]rime prevention & suppression."

27.     In response to multiple records requests with respect to the Median Ban and the information that the City Council considered in passing it, the City has not produced any evidence that supports its purported safety-related justification.

28.     The City identified GPD Chief Jerry Garner as the "key staff contact" for both ordinances.

29.     The only substantive content in the July 7, 2015 City Council minutes with regard to the repeal of the solicitation ban reads as follows:  "Jerry Garner, Police Chief, reported that the proposed revisions and additions are intended to clarify impermissible conduct with a refocused emphasis on safety without limiting meaningful communication."

30.     The only substantive content in the July 7, 2015 City Council minutes with regard to the Median Ban reads as follows:  "Chief Garner reported that again this ordinance proposes revisions and additions that will aid officers when trying to enforce this law within the

community, in particular dealing with distractions in the median and on corners where passing motorists are being solicited for money."

31.     According to a news article appearing in the *Greeley Tribune* the following day, July 8, 2015, Chief Garner said the Median Ban "addresses quality of life issues that have been raised by residents who, quite frankly, view panhandlers as a blight on Greeley's image."[1]  Chief Garner further stated, "I've . . . received a lot of complaints about the number of bums citizens see on the street corners soliciting money.  They don't want to see it in Greeley, and I happen to agree with them."   According to the article, Chief Garner said he thought the majority of panhandlers were not interested in improving their lives.  He said that in reality, they used the money they solicited on the street to feed their drug and alcohol addictions.  Chief Garner also said:  "The majority of [panhandlers] are not victims that are down on their luck; they're petty criminals . . . .  This truly is a form of fraud.  I don't think it's fair and I hate to see kindhearted people victimized by these crooks."

32.     Three weeks after the passage of the Median Ban, GPD directed its officers to invoke the Median Ban to target panhandling.

33.     That directive followed the Supreme Court's late-term decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015).  That ruling, which clarified how courts must analyze whether regulations that directly address speech are content-based and therefore subject to strict scrutiny, *see id.* at 2228-31, created a constitutional problem for Greeley's Municipal Code Section 10.24.045, titled "panhandling."   Because that ordinance expressly prohibited panhandling in

---

[1] Joe Moylan, *Greeley panhandlers assaulted before City Council approves curbside solicitation changes*, Greeley Tribune, July 8, 2015, available at https://www.greeleytribune.com/news/crime/greeley-panhandlers-assaulted-before-city-council-approves-curbside-solicitation-changes/.

specific situations (not confined to roadways and occupants of vehicles), the *Reed* analysis meant that the ordinance was content-based on its face and therefore unconstitutional.[2]

34.     On July 28, 2015, GPD Captain Mike Savage issued the directive in the form of a Department-wide email in which he stated:

> Today we received a written notice from the City Attorney's Office to suspend enforcement of the Panhandling Ordinance 10.24.045. This is being necessitated by recent Supreme Court decisions. The current ordinance will need to be repealed by the City Council. This does not affect <u>those ordinances directed at panhandling in the roadway, specifically 11.01.809 and 11.01.810.</u>
>
> <u>Panhandling is still an issue in our community, please utilize those ordinances which are still applicable, 11.01.809/11.01.810, in resolving these complaints.</u>

(Emphasis added.)[3]

### Enforcement of the Median Ban

35.     GPD officers have followed departmental directives in applying the Median Ban according to its true intent: to target panhandling in Greeley.

36.     GPD officers have frequently ordered panhandlers to move on from various medians throughout Greeley, often with threats of citations.

37.     In addition, since February 14, 2018, GPD has issued at least 14 citations for violation of the Median Ban.

38.     GPD officers issued all 14 citations to individuals who were soliciting charity and holding signs with messages.

---

[2] The City Council ultimately repealed the prior panhandling law, section 10.24.045, on October 18, 2016.

[3] Section 11.01.809 refers to the Median Ban, and 11.01.810 refers to a Greeley provision titled "Conduct in public rights-of way distracting to drivers on the roadway."

39.    The officers wrote narrative descriptions explaining that the individuals were soliciting, and the officers carefully reproduced the text of the specific messages that appeared on the panhandlers' signs.

40.    In most cases, the police officers also included photos of the individuals holding their signs.

41.    The inclusion of this information in the citations confirms that the City intends, and the officers understand, that the Median Ban is a tool for targeting panhandlers.

42.    Examples of panhandlers cited for violating the Median Ban include the following:

   a.  The woman in the following picture holding a sign that read, "DOWN ON MY LUCK TRYING 2 GET HOME ANYTHING HELPS.  GOD BLESS."  The citation noted that she was homeless with no phone, no car, and no job.



b.  A man holding a sign saying "DREAMING OF A CHEESEBURGER."  The issuing officer noted that while he was talking to the man, "drivers pulled up to the stop sign and tried to give [him] money and told me to leave [him] alone." The officer further noted that the man had no car, no job, no house, and no phone number.

c.  A man holding a sign that asked for "A LITTLE HELP."  According to the citation, he accused the officer of "ticketing him for trying to get something to eat."

d.  A man holding a sign that read, "BRAIN INJURY, CAN'T WORK, ANYTHING HELPS!  GOD BLESS . . . ."  The issuing officer noted that the man "said he was trying to make enough money to rent a hotel room to take a shower."

e.  A woman who was "begging for money" according to the citation.  The issuing officer asked her "if she had a sign and was asking for money," and she responded in the affirmative.

**Plaintiffs**

43.  Plaintiffs wish to engage and continue engaging in protected communicative activities that are forbidden by the Median Ban.

44.  Plaintiffs Blanche Marceleno, Susan Ebbs, and Edward Caussade are among the people who have received citations for seeking charity while standing on Greeley medians.  They are needy individuals who have safely panhandled on Greeley medians to help support their basic financial needs.  When they panhandle, they hold signs on wide medians near stop signs, where the cars are stopped or moving slowly.  They stay on the median and do not step into the street to accept donations.  Plaintiff Tyler Brunner is a community activist and journalist who

wishes to spread his own messages by holding signs on Greeley's medians, in a safe manner as the other three Plaintiffs have done.

45.      Plaintiff Blanche Marceleno is 57 years old.  She has physical and mental health problems, including sciatic nerve damage that causes severe, chronic pain, that prevent her from working.  Ms. Marceleno used to be homeless but was able to secure a tiny apartment about two years ago.  She receives disability benefits, but most of that income goes toward her rent and phone bill.  She relies on panhandling for most everything else, including food and Medicaid copays.

46.      Ms. Marceleno used to panhandle on a very large, grassy median near 8th Avenue and 23rd Street, which she can see from the front door to her apartment.  She usually held a sign asking for help and sometimes mentioning that she does not drink or do drugs.

47.      On multiple occasions in 2018, GPD Police officers told Ms. Marceleno to leave the median.

48.      Then, on October 18, 2018, Ms. Marceleno received a citation for being on the median.  The citing officer noted in his report that Ms. Marceleno was holding a sign saying, "PLEASE ANYTHING HELPS GOD BLESS."

49.      Ms. Marceleno used her meager earnings and relied on the help of a friend to pay her ticket.

50.      Out of fear of being ticketed again, she has not returned to the median near 8th Avenue and 23rd Street.

51.      Instead, on occasion she has made the painful half-hour walk to panhandle on a street corner a mile away outside a King Soopers grocery store near Highway 34 and 11th Avenue.

52.     Because of her disability, which makes walking difficult, Ms. Marceleno does not panhandle as frequently as she did before being ticketed.  Not being able to panhandle as often has made it harder for Ms. Marceleno to pay for clothes and medicine.  She has had to break pills in half to make them last longer.

53.     Ms. Marceleno wants to continue safely panhandling on medians, including the large median near her apartment, but she knows that by doing so she puts herself at risk of receiving another costly citation for violating the Median Ban.

54.     Plaintiff Susan Ebbs is 51 years old and a longtime Colorado resident.  In 1997, she suffered a horrific car accident that caused severe injuries, including to her back.  She continues to suffer from multiple herniated discs and the frequent re-fracturing of other discs.  Ms. Ebbs has not been able to work since the accident, and her Supplemental Security Income does not provide enough to cover all her expenses.  Four years ago, Ms. Ebbs was living in Fort Lupton, Colorado, when she lost her home to foreclosure and became homeless for a period of time.

55.     Ms. Ebbs currently lives in a mobile home in Gilcrest, Colorado, about a 15-minute drive from the large median where an officer cited her for violating the Median Ban on May 25, 2018.  At the time, she was holding a sign that said, "NEED HELP ANYTHING HELP'S THANK YOU."

56.     The officer who issued the citation to Ms. Ebbs told her to go panhandle in nearby Garden City.  He pointed in the direction of a group of homeless people in the distance and said, "You see that trash standing down there?  Go stand there with them."  The officer included a photo of Ms. Ebbs with her sign in his narrative.

57.     Since receiving the citation, Ms. Ebbs sells plasma instead of relying on panhandling to help pay her bills.  It took her close to a year to pay off the ticket and even longer to get caught up on her bills.  Ms. Ebbs wants to engage in safe panhandling at medians, but doing so puts her at risk of receiving another costly citation for violation of the Median Ban.

58.     Plaintiff Edward Caussade is 33 years old and has lived in Greeley for eight years. Mr. Caussade has adenocarcinoma, a form of cancer.  He became unemployed and homeless after receiving his diagnosis.  He turned to panhandling to help pay for food and medical costs.

59.     GPD officers have enforced the Median Ban against Mr. Caussade on multiple occasions, usually by ordering him to move on and threatening the prospect of citations.  Police have told him he should go panhandle in nearby Garden City.

60.     In early April, 2019, an officer cited Mr. Caussade for violating the Median Ban. The officer's narrative said Mr. Caussade was standing "next to a stop sign holding a cardboard sign apparently begging for money."

61.     Mr. Cassaude wants to be able to ask for charity on Greeley's medians without risk of getting another costly citation for violating the Median Ban.

62.     Plaintiff Tyler Brunner is a 32-year-old community activist and independent journalist who has lived in Greeley his entire life.  Mr. Brunner was in high school during the September 11, 2001 attacks, which proved to be a formative event in is life.  He was particularly struck by the strong reactions to the event that those around him exhibited, notwithstanding their lack of knowledge and perspective toward the targets of their hatred.

63.     Mr. Brunner came out of that experience wanting to challenge people's understanding of issues.  He sees it as his patriotic duty to inform.  Mr. Brunner runs the website greeleyindie.com, a local independent news outlet dedicated to simplifying complex topics and

explaining how national issues play out in Greeley. Mr. Brunner seeks to engage Greeley residents from across the political spectrum on issues such as criminal justice, income equality, and voting rights. He is also frustrated with what he has perceived throughout his life to be efforts by the City to quash free speech in public spaces, such as laws barring panhandling.

64.    Mr. Brunner wants to stand on a median to promote his website and display political messages to Greeley residents. But he cannot do so without violating the challenged Ordinance. If the Ordinance were not in place, Mr. Brunner would display the following messages: "Casino capitalism is killing us all," "I'm pro-life and pro state-sanctioned child kidnapping," "Stop Iraq 2.0 before it begins," and "Why does Greeley government want to stop this action?"

65.    Like the other Plaintiffs, Mr. Brunner wishes to be free to engage in expression that is prohibited by the Median Ban.

66.    Without this Court's intervention, Plaintiffs are forced to choose to either violate the Median Ban or forego their constitutionally-protected communicative activities.

## INJUNCTIVE RELIEF

67.    Plaintiffs are entitled to a temporary restraining order, as well as preliminary and permanent injunctions. Defendant is acting and threatening to act under color of state law to deprive Plaintiffs of their constitutional rights. Plaintiffs are suffering irreparable injury and will continue to suffer a real and immediate threat of irreparable injury as a result of the existence, operation, enforcement, and threat of enforcement of the Median Ban. Plaintiffs have no plain, adequate, or speedy remedy at law.

**DECLARATORY RELIEF**

68.     An actual and immediate controversy exists between Plaintiffs and Defendant. Plaintiffs contend that the Median Ban is unlawful and unconstitutional.  Defendant believes the Median Ban is lawful.

69.     Plaintiffs are therefore entitled to a declaration of rights with respect to this controversy.  Without such a declaration, Plaintiffs will be uncertain of their rights and responsibilities under the law.

**CLAIM FOR RELIEF**
**(First Amendment)**

70.     The allegations of the preceding paragraphs are incorporated as though fully set forth herein.

71.     The Median Ban unconstitutionally infringes or imminently threatens to infringe the freedom of Plaintiffs to fully exercise their First Amendment rights, including their rights of freedom of speech and freedom of expression, in violation of the First Amendment.

72.     Although the City passed the Median Ban to suppress the speech of impoverished persons who seek charity for themselves, the Median Ban's reach is much broader.

73.     The Median Ban prohibits all pedestrian presence, and therefore virtually all speech, on Greeley's medians, which are public forums where the government's power to restrict expression is at its weakest.

74.     The Median Ban applies to all of Greeley's medians, no matter how wide or how slow the surrounding traffic, and without regard to any arguable risk to public safety.

75.     The Median Ban is not narrowly tailored to advance a compelling or a significant interest.

76.     The Median Ban fails to leave open ample and adequate alternative channels for Plaintiffs and others to reach their intended audience.

77.     By acting and threatening to act under color of state law to deprive Plaintiffs of rights guaranteed by the Constitution and laws of the United States, Defendant has violated and threatened to continue violating 42 U.S.C. § 1983.

78.     This constitutional violation has caused Plaintiffs Marceleno and Ebbs nominal damages for which they are seeking $1.00.

79.     Wherefore, Plaintiffs are entitled to a declaratory judgment, interim and permanent injunctive relief, and such other relief as the Court deems just.

## REQUEST FOR RELIEF

Plaintiffs respectfully request that the Court:

A.     Issue a declaratory judgment holding that the Greeley's law prohibiting pedestrian presence on medians violates the United States Constitution and the Colorado Constitution;

B.     Issue a temporary restraining order, preliminary injunction, and permanent injunction prohibiting Defendant from enforcing the Median Ban;

C.     Award Plaintiffs Marceleno and Ebbs nominal damages;

D.     Award Plaintiffs costs and reasonable attorneys' fees; and

E.     Award other relief as this Court may deem just and proper.

15

DATED this 10th day of September, 2019.

*s/ Daniel D. Williams* _____ _____
Daniel D. Williams
Colleen M. Koch
HUTCHINSON BLACK AND COOK, LLC
921 Walnut Street, Suite 200
Boulder, Colorado 80302
williams@hbcboulder.com
koch@hbcboulder.com
(303) 442-6514

*In cooperation with the ACLU*
*Foundation of Colorado*

*s/ Mark Silverstein* _____
Mark Silverstein
Arash Jahanian
Rebecca T. Wallace
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF COLORADO
303 E. 17th Avenue, Suite 350
Denver, Colorado 80203
msilverstein@aclu-co.org
ajahanian@aclu-co.org
rtwallace@aclu-co.org
(720) 402-3114

ATTORNEYS FOR PLAINTIFFS